UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMAL D. JONES,

                Plaintiff,

v.                                    Case No. 22-cv-694-pp

TRITI, *et al.*,

                Defendants.

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

On June 15, 2022, the court received a complaint ostensibly filed by five plaintiffs, all of whom were or had been incarcerated at the Milwaukee County Jail. Dkt. No. 1. On August 26, 2022, the court ordered that by September 16, 2022, each plaintiff must either pay the $402 filing fee (or move to proceed without prepaying it) or ask to withdraw from the case. Dkt. No. 10. On September 6, 2022, the orders the court had sent to plaintiffs Justin L. Williams and Urijah Davis were returned to the court as undeliverable, and neither plaintiff provided a more current address. Dkt. No. 12. The same day, the court received a trust account statement from plaintiff Jamal D. Jones, signaling his intent to remain in the case. Dkt. No. 13. On September 12, 2022, the court received plaintiff Jack A. Clayborne's motion for an extension of time to file his trust account statement, which showed that he, too, wanted to remain in the case. Dkt. No. 14. On September 15, 2022, the court received plaintiff Robert D. Cartledge's notice of withdrawal. Dkt. No. 15. The court terminated Cartledge from the case the same day. On October 27, 2022, the

court issued an order dismissing Williams and Davis, granting Clayborne's motion for an extension of time to file his trust account statement and allowing the case to proceed with the two remaining plaintiffs, Clayborne and Jones. Dkt. No. 16.

After the court issued the October 27, 2022 order, Clayborne repeatedly requested additional time to comply with the court's orders to file his trust account statement and then to pay the assessed initial partial filing fee. See Dkt. No. 36 (documenting Clayborne's history of requests for extensions of time). On November 30, 2023, the court dismissed Clayborne from the case because he had (again) failed to comply with the court's orders to pay the initial partial filing fee or describe "exceptional circumstances warranting additional time." Id. (quoting Dkt. Nos. 28, 33). The court noted that this "lawsuit will move forward with Jones as the only plaintiff." Id. at 6. The court said that it would "enter a separate order screening the complaint as it relates to Jamal Jones, the sole plaintiff in the lawsuit." Id. at 7. This order screens the complaint as it relates to Jones.

I.  **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 6)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

2

Case 2:22-cv-00694-PP   Filed 12/14/23   Page 2 of 17   Document 38

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On March 31, 2023, the court ordered Jones to pay an initial partial filing fee of $1.70. Dkt. No. 23. The court received that fee on April 11, 2023. The court will grant Jones's motion for leave to proceed without prepaying the filing fee (Dkt. No. 6) and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

3

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint is forty-six pages long, and it names numerous defendants. Dkt. No. 1 at 1. Some of the defendants are acronyms (TRITI, MPJMJ, CNMCM and so on). Id. The complaint does not explain what those acronyms stand for, and the court is not familiar with them. The complaint also lists several officers as defendants: T. Foley, Chan-Viramontes, Johnson, Irby, Polk, Ward, Hodges, Fisher and Madden. Id. Finally, it names the Milwaukee County Sheriff and "Doe's." Id.

4
Case 2:22-cv-00694-PP   Filed 12/14/23   Page 4 of 17   Document 38

The complaint does not make allegations that apply to all five plaintiffs; instead it includes several pages of allegations specific to each of the four former plaintiffs and Jones, though the entire complaint is in plaintiff Clayborne's handwriting. Id. at 4–39. Pages 4 through 22 are specific to Clayborne, who signed the complaint at the end of his allegations. Id. at 22. Beginning below plaintiff Clayborne's signature are the allegations related to plaintiff Cartledge, which extend to page 26. Id. at 22–26. Cartledge begins his section by noting that while he was at the jail, he "had the unfortunate luck to have had suffered a lot of these same conditions placed in this complaint written by Jack A. Clayborne." Id. at 22. He signed the complaint at the end of his section. Id. at 26. Plaintiff Williams's section is next, and it similarly begins by noting that he "ha[s] been treated in a way of deliberate indifference" at the jail. Id. at 26–27. Williams's section ends at page 33 with his signature. Id. at 33. Pages 33 through 35 relate to Jones, the only remaining plaintiff in the lawsuit. Id. at 33–35. Pages 36 through 39 relate to plaintiff Davis, who begins his section by saying that he "agree[s] to many, if not all of the issues being complained about in these complaints/complaint." Id. at 36. Davis signed the complaint at the end of his section. Id. at 39.

As noted, Jones's allegations begin on page 33. Id. at 33. He alleges that dayroom hours at the Milwaukee County Jail are from 10:00 a.m. to 6:00 p.m., but he is "let out for Dayroom later than 10:00 a.m." Id. He says he "also lose[s] Dayroom everyday due to Med-pass, staff breaks, shortage of staff etc., etc." Id. Jones alleges that during the weekends, he "only get[s] 3 to 4 hours of

5

Dayroom (Sunday or Saturday) due to shortage of staff, which is only the first half or the second half of the day." Id. at 33–34. Jones says that staff who work "at the desk will lock you in for personal problems that follow them in from home." Id. at 34.

Jones alleges that the jail "has a window blockage/fog on the windows, preventing inmates from seeing outside" and "blocking sunlight from coming in." Id. Jones alleges that, because his mirror is "made the way it is, [he] cannot/have not been able to see [his] reflection for months, which is depressing." Id. He says he also has "seen many times, that if one inmate is accused of or caught doing wrongful things, that there is mass punishment issued." Id. at 34–35. He then alleges that he was "locked-in from the 26th of April until the 27th of April, which exceeded 24 hours of cell confinement." Id. at 35. He says that he asked for names of the officers responsible, but they "refused to give [him] the names of those responsible for [his] lock-in." Id.

After the allegations specific to each plaintiff is a statement that says

> [t]he Constitutional violations stated herein are violations to our; 1st Amendment, 4th Amendment, 8th Amendment, 14th Amendment right to equal protection, 14th Amendment right to due process[.] The Constitutional violations stated herein are not just a matter of Mental or Emotional injury but are injuries to Our Liberty. There are also many witnesses to these Constitutional violations (Many have given a Declaration).

Id. at 39–40. The complaint says that the plaintiffs are "suing all responsible in their Official and personal/Individual Capacity" for "physical, mental, emotional and psychological damages." Id. at 41. The complaint says the plaintiffs are seeking $1 million in damages and "[i]njunctions to stop the

6
Case 2:22-cv-00694-PP   Filed 12/14/23   Page 6 of 17   Document 38

Defendant's from violations to [their] rights." Id. The complaint says that it is not "revealing the names of all the Defendant's and those responsible for violating [the plaintiff's] rights." Id. It cryptically says, "Amongst other things, [the plaintiffs] have the rights to request." Id.

   C.   Analysis

Jones notified the court on June 30, 2023, that he had been transferred to the Wisconsin Secure Program Facility. Dkt. No. 29. The complaint suggests that Jones may have been a pretrial detainee at the time of the alleged events, but it is not clear. The Wisconsin Department of Corrections Offender Detail website shows that on January 9, 2017, Jones was released on a Department of Community Corrections hold; he was readmitted to Dodge Correctional Institution on March 13, 2023. See https://appsdoc.wi.gov/lop/details/detail (DOC #626439). The Wisconsin Circuit Court Access website shows that on June 4, 2021, a criminal complaint was filed against Jones; on June 9, 2022, a jury found the plaintiff guilty of first-degree intentional homicide and other charges; and a judgment of conviction was entered on March 6, 2023. See State v. Jones, Milwaukee County Case Number 2021CF2223, available at https://wcca.wicourts.gov/. This information leads to the conclusion that in April 2022, Jones was a pretrial detainee at the jail.

Because Jones was a pretrial detainee at the time of the alleged events, the court analyzes his claims about the conditions of his confinement under the Fourteenth Amendment. See Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 856 (7th Cir. 2017). Jail officials may violate a pretrial detainee's

7
Case 2:22-cv-00694-PP   Filed 12/14/23   Page 7 of 17   Document 38

constitutional rights if they act unreasonably to objectively serious living conditions that deprive the detainee of basic human needs. See Smith v. Dart, 803 F.3d 304, 309–10 (7th Cir. 2015). To state a claim regarding the conditions of his confinement, the plaintiff must allege that the conditions in question were objectively serious; the defendants acted purposefully, knowingly or recklessly with respect to the consequences of their actions; and the defendants' conduct was "objectively unreasonable"—that is, it was not "'rationally related to a legitimate non-punitive governmental purpose'" or was "'excessive in relation to that purpose.'" Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)).

Jones's section of the complaint alleges a handful of issues. He says that he received limited dayroom hours. He says that these hours often began after the dayroom start time of 10:00 a.m., and that he received only three or four hours in the dayroom during one day of each weekend. He says staff sometimes punished detainees because of their own "personal problems" that they were experiencing at home. He says the windows at the jail had a covering that kept out sunlight, and that he could not see his reflection in his mirror. He says he witnessed mass punishment of detainees when one incarcerated person did something wrong. And he says he was locked in his cell for more than twenty-four hours between April 26 and 27. (The court presumes this occurred in 2022.) Jones does not say who was responsible for any of this

conduct, but he says jail staff refused to provide him any names of who was responsible.

It is possible that some of this conduct may have violated Jones's rights under the Fourteenth Amendment. Pretrial detainees may not be punished, and they are entitled to a certain amount of recreation time. See Mulvania, 850 F.3d at 856 (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)); Duran v. Elrod, 542 F.2d 998, 1001 (7th Cir. 1976). The plaintiff alleges that he was released into the dayroom for recreation time later than the 10:00 a.m. begin time, but he does not say how much later. If he was let out of his cell only five or ten minutes past 10:00 a.m., he likely does not state a claim. But if he was let out several hours past 10:00 a.m., that may state a claim. He also does not say how often this happened. Was he let out late to the dayroom frequently, a few times or every day? Jones also does not say whether he was allowed into the dayroom late as a form of punishment or simply because of the staff shortages he alleges.

Jones also alleges that jail staff punished detainees because of their "personal problems" at home, and he says he witnessed staff punishing many detainees when one misbehaved. It would not be objectively reasonable for staff to punish detainees because of their own personal problems, nor would it be appropriate to punish all detainees because of one person's transgression. But Jones does not allege that either of those things happened to him personally. He says only that he witnessed it occurring or saw it "many times." Dkt. No. 1 at 34. Jones cannot sue on behalf of any other detainee, Lewis v. Casey, 518

9

U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999); he must allege how he personally suffered a deprivation of his rights, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The court cannot infer from the limited information in the complaint whether Jones may state a claim regarding his time in the dayroom or the improper and mass punishments.

Jones alleges that the windows of the jail have a covering or film that blocked sunlight from coming into the jail. One court in this circuit has noted that "[t]he Seventh Circuit has suggested that detainees have a constitutional right to 'sunshine and fresh air.'" Passmore v. Josephson, 376 F. Supp. 3d 874, 886 (N.D. Ill. 2019) (quoting Jerricks v. Schomig, 65 F. App'x 57, 58 (7th Cir. 2003)). Other courts have differed over whether a lack of sunlight violates the Constitution. Compare Gonzalez v. Josephson, No. 14-CV-4366, 2019 WL 1013737, at *20 (N.D. Ill. Mar. 4, 2019) ("Plaintiffs complain about a lack of sunlight, but they have not established a constitutional right to sunlight."); with Lindell v. Frank, Case No. 06-C-608-C, 2006 WL 3300379, at *7–*8 (W.D. Wis. Nov. 13, 2006) (citing cases and concluding that an incarcerated person's allegations that he received only two and a half hours of sunlight each week stated a claim). Jones says the jail's windows allowed in no light at all. He does not say whether he otherwise had access to the outdoors, perhaps during his limited dayroom time. Like Jones's other claims, it is possible he may state a claim about his limited access to sunlight. But the complaint does not provide enough information for the court to allow him to proceed on this claim.

Jones also alleges that he could not see his reflection in his mirror, which he found depressing. The court could find no cases discussing a similar argument or determining whether pretrial detainees have a constitutional right to see their reflection. Jones does not allege whether this is a condition that jail staff forced on him as punishment or whether the mirrors at the jail just do not work correctly. It may be that his mirror was broken, and he might have been able to request a new one so he can see his reflection. Again, the court cannot determine from the complaint's scant detail whether Jones might state a violation of his rights based on his claim that he was unable to see his reflection for months at the jail.

Jones says that on one occasion, he was locked in his cell for over twenty-four hours, but the complaint provides no further detail. Some courts have found that a pretrial detainee who alleged that he was "locked down in his cell for 24 hours without a shower or yard time" did not state a constitutional violation. Sisk v. Abernathy, Case No. 20-4109, 2020 WL 6153081, at *1 (C.D. Ill. Oct. 20, 2020) (citing Erler v. Dominguez, Case No. 2:09-CV-88-TLS, 2010 WL 670235, at *6 (N.D. Ind. Feb. 18, 2010)). But others have noted that "[b]eing placed in segregation as punishment without reason violates a pretrial detainee's right to due process." Jones v. Fairman, No. 95 C 5539, 1997 WL 159474, at *2 (N.D. Ill. Mar. 28, 1997) (citing Hawkins v. Poole, 779 F.2d 1267, 1269 (7th Cir. 1985); and Zarnes v. Rhodes, 64 F.3d 285, 291 (7th Cir. 1995)). Jones does not say why he was locked in his cell for longer than a full day. Nor does he allege whether he was being punished or whether this was because of

the staff shortages or another non-punitive reasons. The complaint does not provide enough detail for the court to determine whether this incident may have violated Jones's rights.

As noted, Jones's allegations do not name any defendant whom he thinks was responsible for violating his rights. He does not say that any of the named defendants are responsible. If Jones does not know the names of the persons who are responsible, he may use a "John Doe" placeholder to identify them. But he has not done that. He simply says that these things occurred and that the jail (or its staff) is responsible. The court cannot allow Jones to proceed against an unknown number of unknown persons without any information about who they might be. Nor may Jones proceed generally against "the 'staff' of the [jail]" because that is not a person that may be sued under §1983. Cash v. Marion Cnty. Jail, 211 F. App'x 486, 488 (7th Cir. 2006) (affirming district court's dismissal of suit naming Marion County Jail "staff" as defendants). Similarly, the jail is not a "suable entity," Smith v. Knox Cnty. Jail, 666 F.3d 1037, 1040 (7th Cir. 2012); it is a unit of the Milwaukee County Sheriff's Department, which itself is not suable. See Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004).

The court concludes that the complaint as alleged does not state a proper claim against any defendant. The court suspects that the vague nature of Jones's allegations is because someone other than Jones (likely Clayborne) wrote Jones's allegations for him. The court believes that if Jones writes his own complaint, it is more likely that he may state a claim for a violation of *his*

rights, and he likely will be able to provide more detailed allegations about what he believes occurred and who was responsible. It also will be much easier for all parties and the court if Jones provides a complaint that details only his own allegations, rather than those related to him and four other incarcerated persons who no longer are plaintiffs.

Because Jones may be able to state a claim with additional detail, the court will give him an opportunity to amend his complaint to correct the deficiencies noted and better explain the claims in his complaint. When writing his amended complaint, Jones should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? Jones's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. Jones must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, Jones may use up to five additional sheets of

paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. Jones may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

If Jones does not know the name of the jail staff member who allegedly committed a particular act, he may refer to that staff member as "John Doe" and then provide a description. For example, he may say, "John Doe white male lieutenant second shift," or "John Doe Black male corrections officer on duty in the day room." If the court allows the plaintiff to proceed on the amended complaint, it will give him information on how to use discovery to learn the real names of the "John Doe" defendants.

As a final note, the complaint seeks damages and injunctions to stop the alleged violations of Jones's rights. But Jones no longer is incarcerated at the jail, and he does not allege that he expects to return. Because Jones is no longer at the jail, his request for injunctive relief is moot. Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"). If Jones files an amended complaint that complies with the instructions in this order, he may seek money damages, but he may not seek injunctive relief against the jail or jail staff.

### III. Conclusion

The court **GRANTS** plaintiff Jones's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **CONCLUDES** that the complaint fails to state a claim.

The court **ORDERS** that Jones may file an amended complaint that complies with the instructions in this order. If Jones chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **January 26, 2024**. If Jones files an amended complaint in time for the court to *receive* it by the end of the day on January 26, 2024, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive from Jones an amended complaint by January 26, 2024, the court will dismiss the case based on his failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of Jones must collect from his institution trust account the **$348.30** balance of the filing fee by collecting monthly payments from Jones's prison trust account in an amount equal to 20% of the preceding month's income credited to Jones's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If Jones transfers to another county, state or federal institution, the transferring

institution must forward a copy of this order, along with Jones's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Wisconsin Secure Program Facility.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises Jones that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises Jones that it is his responsibility to promptly notify the court if he is released from custody or

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

transferred to a different institution. Jones's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 14th day of December, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**