UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMAL D. JONES,

                Plaintiff,

v.                                     Case No. 22-cv-694-pp

T. FOLEY, *et al.*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 39) UNDER 28 U.S.C. §1915 AND ORDERING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT WITHIN THIRTY DAYS**

On December 14, 2023, the court issued an order screening the complaint as it relates to Jamal D. Jones, the only remaining plaintiff in this case. Dkt. No. 38. The court concluded that the complaint did not provide enough information to state claim and did not name a proper defendant. Id. at 8–12. The court gave the plaintiff "an opportunity to amend his complaint to correct the deficiencies noted and better explain the claims in his complaint." Id. at 13. The court ordered him to file an amended complaint by January 26, 2024. Id. at 15. On December 26, 2023, the court received the plaintiff's amended complaint. Dkt. No. 39. This order screens the amended complaint.

**I.**     **Screening the Amended Complaint**

        A.    <u>Federal Screening Standard</u>

As it explained in the previous screening order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The

court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by

plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint names as defendants T. Foley, Chan-Viramontes, Irby, Ward, Hodges, Fisher, Madden and Howard. Dkt. No. 39 at 1. The complaint alleges that all defendants work at the Milwaukee County Jail, but it does not specify what positions they hold. Id. at 2. The plaintiff says that he seeks to proceed against the named defendants "and other defendants who[se] names that was refused to [him]." Id.

The plaintiff alleges that the defendants "violated [his] rights by coming into work 1 to 2 hours late sometimes not coming in at all," which he says "stop[ped] [him] from getting [his] proper dayroom hours." Id. He says this "will happen everyday [*sic*]," and he "would be lucky to get 3 to 4 hours on the weekend." Id. But the plaintiff also alleges that he and other incarcerated persons were "in [their] room all day" every weekend. Id. The complaint alleges that the plaintiff's "whole time in Milwaukee County Jail everyday with no outside," which the court interprets to mean that the plaintiff received no time outdoors while he was incarcerated at the jail. Id. The plaintiff also alleges that "the windows at the Jail had a covering that kept sun light out." Id.

The complaint next alleges that, "[a]lmost everyday, [the plaintiff] would receive Mass punishment for someone else wrong doing [*sic*]." Id. The plaintiff says that he "would [be] locked in [his] cell with no dayroom no phone to talk to

[his] family no nothing because someone else wrong doing [*sic*]." Id. at 2–3. He says he "was locked in [his] cell for a minor for twenty-four hour's [*sic*] for telling a staff to stop talking to [him]." Id. at 3. He says "I did not say it rude or disrespectful I just told him stop talking to me how he was talking to me." Id. The plaintiff alleges, "[i]t's not what you say even though the[re] is no other way to say shut up more wrongly [*sic*] the [*sic*] shut the F up and get to class." Id. The plaintiff says he asked the staff member to repeat what he said, and the staff member "ask[ed him] do [he] want a lock-in." Id. The plaintiff says he responded, "you gone [*sic*] lock me in cause you cursed at me." Id. The plaintiff then asked the staff member to "stop talking to [him] and walked off into [his] class before things got worst [*sic*]." Id. The plaintiff says he left his class at 2:30 p.m. and went to his cell, where unnamed staff told him he "had a lock-in." Id. He alleges this lock-in lasted until "3:30 p.m. on the 27th with no shower that's more than twenty-four hours locked in [his] cell with no shower." Id. The plaintiff says he asked who was responsible for ordering him locked in his cell, but "the Jail staff refused to provide [him] any names of who was responsible." Id.

The plaintiff next alleges that "when staff came in late with the[ir] personal problems and other people yelling they make [him and other incarcerated persons] wait longer to come out." Id. He says that because he was unable to leave his cell, he could not "do [his] phy[s]ical therapy or get out to stretch [his] leg." Id. at 4. He says this caused his hip to deteriorate. Id. The plaintiff explains that he "had a hip replacement that was not cared for do [*sic*]

to [him] not being out to do so." Id. He says that some days, "no one came to work so [he and other incarcerated persons] had to stay in the cell." Id. He reiterates that on those days, he "couldn't do [his] phy[s]ical therapy," and he instead was able to do his physical therapy only "once[] every two to four weeks apart." Id.

The plaintiff says he is "suing all responsible in their official and personal/Individual capacity." Id. at 5. He seeks $1 million in damages and an "[i]njunction to stop the defendant's [*sic*] from violations to [his] rights." Id.

  C. <u>Analysis</u>

The amended complaint alleges the same issues as the original complaint. It alleges that the plaintiff received limited dayroom hours, that staff punished him because of their personal problems at home and based on the actions of other incarcerated persons, that the jail's windows had a covering that kept out all sunlight and that the plaintiff was locked in his cell on one occasion for over twenty-four hours. See Dkt. No. 38 at 8–11. The plaintiff reiterates these issues in his amended complaint but adds little new information about these claims. He newly adds that he was locked in his cell because he told a member of the jail's staff not to speak with him during a disagreement. He also newly alleges that on the occasions when he was locked in his cell, he could not do his physical therapy exercises that he needed to perform to avoid his hip replacement deteriorating.

The court determined in the previous screening order that the plaintiff was a pretrial detainee when he was incarcerated at the Milwaukee County

Jail. Dkt. No. 38 at 7. The court analyzed his claims under the Fourteenth Amendment. Id. at 7–8 (citing Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 856 (7th Cir. 2017)). But the court concluded that the plaintiff had not provided sufficient information for it to determine whether the alleged conduct violated the plaintiff's Fourteenth Amendment rights. For example, the plaintiff did not allege how much dayroom time he was deprived of, did not explain how often these deprivations occurred and did not say whether he was given reduced dayroom time as a form of punishment or because of staff shortages he mentioned. Id. at 9. The amended complaint newly alleges that staff came into the jail an hour or two late every day and sometimes did not come in at all. The plaintiff says he was lucky to receive three to four hours of dayroom during weekends and that most weekends, he did not receive any dayroom time. Although the plaintiff now has alleged the frequency of his reduced dayroom time, he still has not alleged *why* his dayroom time was decreased. Was this intentional punishment by jail staff? Or were there simply not enough staff to cover each jail shift?

    The plaintiff reiterates that there was a covering on the jail's windows that kept out sunlight, and the amended complaint suggests that he was not provided any outdoor time while incarcerated at the jail. It is possible these allegations may state a claim, as the court noted in the previous screening order. Dkt. No. 38 at 10 (citing cases).

    The plaintiff also reiterates that he was locked in his cell for over twenty-four consecutive hours. He now says that this was in response to him telling a

staff member not to talk with him after a disagreement. The court explained in the previous screening order that some courts "have noted that '[b]eing placed in segregation as punishment without reason violates a pretrial detainee's right to due process.'" Id. at 11 (citing cases). But the plaintiff says he was locked down as punishment for his comments to staff. The jail is allowed to "punish a pretrial detainee for his own misconduct that occurs while in pretrial confinement." Rapier v. Harris, 172 F.3d 999, 1002 (7th Cir. 1999). The amended complaint suggests that the plaintiff's twenty-four-hour lockdown was not arbitrary punishment but instead was "reasonably related to a legitimate governmental objective." Bell v. Wolfish, 441 U.S. 520, 539 (1979).

Although the plaintiff adds some new detail to some of his claims, the court still cannot determine whether the allegations in the amended complaint state a claim because the plaintiff still does not say who is responsible for any of the alleged violations of his rights. As the court explained in the previous screening order, the plaintiff may use a "John Doe" placeholder to identify any defendants whose names he does not know. The plaintiff did not follow that suggestion, though he has identified at least eight persons who he believes violated his rights. But he does not mention any of those persons by name in his allegations. He lists the defendants in the caption of the amended complaint and then refers to them only collectively, alleging that "[t]he defendants here and other defendants" whose names he was unable to obtain violated his rights. Dkt. No. 39 at 2. His allegations seek to proceed only

generally against this group of defendants without specifying which of them are responsible for which constitutional violations.

As the court previously explained, the plaintiff may not "proceed generally against 'the "staff" of the [jail]' because that is not a person that may be sued under §1983." Dkt. No. 38 at 12 (citing Cash v. Marion Cnty. Jail, 211 F. App'x 486, 488 (7th Cir. 2006)). Similarly, the plaintiff may not proceed against a list of potential defendants without alleging what each did to violate his rights. The plaintiff "must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right." Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000). The court informed the plaintiff how to satisfy this requirement when filing his amended complaint, advising him "to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim." Dkt. No. 38. The plaintiff did not follow that advice, and the amended complaint does not provide sufficient information about the plaintiff's claims or which defendants are responsible.

The amended complaint also repeatedly asserts that the plaintiff and other incarcerated persons suffered similar violations of their rights. But as the court previously explained, the plaintiff "cannot sue on behalf of any other detainee." Dkt. No. 38 at 9–10 (citing Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999)). He may sue only for violations of his own rights, which he must allege with more specific information than the amended complaint provides.

The amended complaint also seeks to proceed against the defendants in their official capacities. Because the defendants are alleged to be employees of the Milwaukee County Jail, the court construes the claims against them in their official capacities as if the plaintiff had made the allegations against Milwaukee County. See Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999). A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)).

The plaintiff has not alleged that there was an official Milwaukee County policy or custom that led to the violations of his rights. He alleges that the defendants collectively violated his rights with their own actions. The amended complaint does not provide enough information to state a claim against Milwaukee County or against the defendants in their official capacities.

Finally, the amended complaint, like the original complaint, seeks injunctive relief ordering the defendants to stop violating the plaintiff's rights. But as the court explained in the previous screening order, the plaintiff's request for injunctive relief is moot because he no is longer incarcerated at the jail. Dkt. No. 38 at 14 (citing Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011)). The court reiterates that the plaintiff "may not seek injunctive relief against the jail or jail staff." Id.

For many of the same reasons the court explained in the previous screening order, the amended complaint does not provide enough information to state a proper claim against any defendant. The court will give the plaintiff ***a final opportunity*** to file an amended complaint that addresses the deficiencies in his complaint and his amended complaint, sufficiently explains the facts supporting his legal claims and identifies a proper defendant or defendants who violated the plaintiff's rights. The court advises the plaintiff to carefully review this order and the previous screening order so that he understands what the court expects from him in a second amended complaint.

The court will enclose a new copy of its amended complaint form. The plaintiff must write "Second" above Amended Complaint at the top of the page, he must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the second amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring. He also must describe which defendants he believes committed the violations that relate to each claim. The

10
Case 2:22-cv-00694-PP   Filed 03/12/24   Page 10 of 12   Document 45

plaintiff must state *who* violated his rights, *what* that person did to violate his rights, *when* the person violated his rights and *how* his rights were violated, and he must do that for every one of his claims. The second amended complaint takes the place of the prior complaints and must be complete by itself. The plaintiff may not refer the court back to his original or amended complaint. He must repeat in the second amended complaint any of the facts from the original complaint or the first amended complaint that he believes are necessary to his claims. If the second amended complaint fails to comply with the instructions in this order, the court will not give the plaintiff another opportunity to amend his complaint, and it will dismiss the case for failure to state a claim.

**II. Conclusion**

The court **CONCLUDES** that the amended complaint fails to state a claim.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file a second amended complaint, he must do so in time for the court to *receive it* by the end of the day on **April 12, 2024**. If the court receives a second amended complaint by the end of the day on April 12, 2024, the court will screen the second amended complaint as required by 28 U.S.C. §1915A. If the court does not receive a second amended complaint by April 12, 2024, the court will dismiss this case based on the plaintiff's failure to state a claim in

his original or amended complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**