UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMAL D. JONES,

                    Plaintiff,

          v.                                    Case No. 22-cv-694-pp

T. FOLEY, *et al.*,

                    Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 46)
UNDER 28 U.S.C. §1915**

On March 12, 2024, the court screened plaintiff Jamal D. Jones's
amended complaint, concluded that it still failed to state a claim and gave him
a final opportunity to file a second amended complaint that better explained
his claims. Dkt. No. 45. The court ordered the plaintiff to file his second
amended complaint in time for the court to receive it by April 12, 2024. Id. at
11. The court received the plaintiff's second amended complaint on March 28,
2024. Dkt. No. 46. This order screens the second amended complaint.

I.     **Screening the Second Amended Complaint**

The court detailed the standards for screening complaints in the two
previous screening orders. Dkt. No. 38 at 3–4; Dkt. No. 45 at 1–3. The court
will not repeat in this order the standards that govern the screening of the
second amended complaint.

A.    The Plaintiff's Allegations

The second amended complaint names as defendants T. Foley, Ward, Hodges, Fisher, Madden and Howard. Dkt. No. 46 at 1. The plaintiff named all those persons as defendants in the previous complaint. Dkt. No. 39 at 1. The plaintiff says that all defendants work at the Milwaukee County Jail as correctional officers. Dkt. No. 46 at 2.

The plaintiff alleges that Officer Foley comes to work on his housing unit one to two hours late, then leaves to get supplies for another hour. Id. He alleges that when Foley returns to the jail, "people are mad cause how he just spent 2 to 3 hours of [their] dayroom time." Id. The plaintiff says that he and the other detainees "are to come out at 10:00am," but they must wait until noon or later to enter the dayroom because of Foley's delays. Id. He says Foley "gets mad cause other people [are] mad and yelling out the door," and he tells other detainees they "can stay in longer [even] when it's not everyone yelling." Id.

The plaintiff next alleges that Officer Madden comes into work "with personal problems and come[s] in late," locks incarcerated persons in their cells until "she fe[els] like letting [them] out" and keeps incarcerated persons in their cells past when she is supposed to allow them into the dayroom. Id. at 2–3. The plaintiff says incarcerated persons also "lose 4 hours a day due to med pass cause [they] have to lock in to come out one at a time." Id. at 3. He alleges that incarcerated persons "have to lock in for" meals three times a day, too, which costs them more dayroom time. Id. He says they also must lock in their cells "and come out one at a time when nurse come for detox [sic]." Id.

The plaintiff alleges that Officer Ward comes in on time "but think[s] it's funny to punished [*sic*] everyone else for one person yelling out the door." Id. The plaintiff alleges that Ward "would say things like if he (meaning the one yelling out the door) don't stop yelling out the door the rest of [the incarcerated persons] [are] not coming out then he would leave and come back 1 to 2 hour's [*sic*] later and if anyone [is] still yelling he would do it again." Id.

The plaintiff alleges that Officer Fisher "would come to work with personal problems and would not want to let [incarcerated persons] out for dayroom." Id. He says Fisher "would sit in the hallway talking to other staff." Id. If incarcerated persons are "yelling [or] talking through the door" when she returns, "she would leave [and] it would take for someone to call a medical emerg[ency] to talk to a Lt for her to open the unit hour's late like 3 to 4 hours late." Id. The plaintiff alleges that Fisher "was fired for having sex with a[n] inmate in staff bathroom while [the plaintiff] w[as] in the unit locked up and suppose[d] to be out." Id. at 3–4.

The plaintiff alleges that Officer Howard also would "not want to open the unit for reason [the plaintiff] do[esn't] know." Id. at 4. He says he would have to wait "3 to 4 hours before she open the unit to give [him] dayroom everyday." Id. He then says he "would come out 2 to 4 hours late and loose [*sic*] time due to med pass food, detox, and any other med related problem." Id. The plaintiff says jail detainees are supposed "to come out at 10:00am and go back in at 6:00pm," but most of the time he "would only get 3 to 4 hours of dayroom." Id. He says that some days he "would not come out" because the defendants

"would come and not want to open the unit for dayroom." Id. He says Officer Hodges "would come in on the weekend's [*sic*] and only open the unit for 1 hour then lock [him] back in and everyone else." Id. The plaintiff alleges that some weekends, he "would not come out at all." Id. He says "[t]his happened everyday that [he] was locked up in the Milwaukee County Jail." Id. The plaintiff alleges that there "were enough staff at the County Jail," but staff told him "they just didn't want to open for their own reason or reason that have nothing to do with [him]." Id.

The plaintiff alleges that when he was locked in his cell, he "could not see no sunlight due to the windows covered with some covering." Id. He says that he "never could go outside cause their [*sic*] is no outside in Milwaukee County Jail so [he] received no sunlight at all [his] whole time their [*sic*]." Id. at 4–5. He reiterates that he was locked in his cell and provided limited dayroom time as "a form of punishment for other's [*sic*] doing something wrong or for personal problems." Id. at 5. He claims "it's all intentional punishment by the Jail staff," and he says that "everyday [he] was deprived of 4 to 5 hours of dayroom." Id. He says he "was unable to do [his] physical therapy and cause of that [his] hip was deteriorating cause [his] hip replacement was not properly cared for." Id.

The plaintiff says he is "suing all responsible in their official and personal/Individual capacity." Id. at 6. He seeks $1 million in damages "for physical, mental, emotional and phychological [*sic*] damages." Id.

B.    Analysis

The second amended complaint makes the same allegations as the original and first amended complaints. It alleges that the plaintiff received limited dayroom hours, staff punished him because of their own personal problems based on the actions of other incarcerated persons, that the jail's windows had a covering that kept out all sunlight and that the plaintiff was locked in his cell on at least one occasion for as long as forty-eight hours. See Dkt. No. 38 at 8–11; Dkt. No. 45 at 5. In the second amended complaint, the plaintiff adds the defendants were correctional officers, and he specifies which officers committed certain acts. He reiterates his previous allegation that on the occasions when he was locked in his cell, he could not do his physical therapy exercises that he needed to perform to avoid his hip replacement deteriorating.

The court previously determined that the plaintiff was a pretrial detainee when he was incarcerated at the Milwaukee County Jail, so the court must analyze his claims under the Fourteenth Amendment. Dkt. No. 38 at 7–8 (citing Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 856 (7th Cir. 2017)). The plaintiff now alleges that he was provided limited dayroom time, if he was provided any at all, as a form of punishment for the misconduct of other incarcerated persons. He reiterates that he and all incarcerated persons were often punished because one person acted out or misbehaved. He clarifies that dayroom time was not limited because of a staff shortage. The plaintiff previously had alleged that he was locked in his cell for over twenty-four consecutive hours because he told a staff member "not to talk with him after a

disagreement." Dkt. No. 45 at 6–7. The plaintiff does not repeat that allegation, but he says that sometimes he was given no dayroom time over an entire weekend.

The court previously stated that some courts "have noted that '[b]eing placed in segregation as punishment without reason violates a pretrial detainee's right to due process.'" Dkt. No. 38 at 11 (citing cases). The court explained that "[t]he jail is allowed to 'punish a pretrial detainee for his own misconduct that occurs while in pretrial confinement.'" Dkt. No. 45 at 7 (quoting Rapier v. Harris, 172 F.3d 999, 1002 (7th Cir. 1999)). That is because state officials may impose punishment that is "reasonably related to a legitimate governmental objective." Bell v. Wolfish, 441 U.S. 520, 539 (1979). But the plaintiff alleges that he was locked in his cell all weekend for reasons that had nothing to do with him or his behavior. If that is true—and the court must assume for purposes of screening that it is—then the officers may have violated the plaintiff's Fourteenth Amendment rights.

The plaintiff explains how each officer was involved in reducing his dayroom time or punishing him for others' actions. He says that Officer Foley forced detainees to remain in their cells longer when one detainee yelled at him for coming in late or leaving to get supplies. He says that Officer Madden would come in late and keep detainees locked in their cells until she felt like letting them out, often dictated by her own personal problems. The plaintiff says that Officer Fisher did the same, and that sometimes the detainees would have to claim there was a medical emergency to be let out of their cells. The plaintiff

6

alleges that Officer Ward, like Officer Foley, punished all detainees when one detainee yelled from his cell. The plaintiff says that Officer Howard would keep detainees locked in their cells for unknown reasons. He says that Officer Hodges would provide him at most one hour out of his cell on weekends and sometimes did not provide him any time out of his cell on weekends. The court finds that these allegations sufficiently tie each defendant to the alleged violations of the plaintiff's Fourteenth Amendment rights. The court will allow the plaintiff to proceed against the defendants for their alleged actions in limiting his dayroom time and keeping him locked in his cell at the jail.

The plaintiff reiterates that there was a covering on the jail's windows that kept out sunlight. He newly alleges that he was not provided any outdoor time or even any sunlight at all during his entire duration at the Milwaukee County Jail. The court explained in the first screening order that other courts "have differed over whether a lack of sunlight violates the Constitution." Dkt. No. 38 at 10 (citing cases). But the second amended complaint suggests that, if such a right exists, the jail violated it by denying the plaintiff any access to sunlight or the outdoors at all during his entire time there. See Jerricks v. Schomig, 65 F. App'x 57, 58 (7th Cir. 2003) (finding potential Eighth Amendment claim for incarcerated person's allegation that he was denied "yard access, sunshine, and fresh air every day from July 29, 1999 until October 2000"). In an abundance of caution the court will allow the plaintiff to proceed on this claim. It will be up to the plaintiff to explain how his denial of access to

sun or sunlight affected his health or caused him harm that violated his constitutional rights.

For the reasons the court explained in the previous order, the second amended complaint does not state a claim against the defendants in their official capacities. Dkt. No. 45 at 9. The second amended complaint still does not allege that there "was an official Milwaukee County policy or custom that led to the violations of his rights. He instead alleges that the defendants collectively violated his rights with their own actions." Id. The court will not allow the plaintiff to proceed on any claim against the defendants in their official capacities. The court also will not allow the plaintiff to proceed on behalf of any other incarcerated person because, as the court previously explained, he "may sue only for violations of his own rights." Id. at 8 (citing Lewis v. Casey, 518 U.S. 343, 349–50 (1996); and Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999)).

The plaintiff alleges that Officer Fisher was fired for having sex with a detainee while the plaintiff was locked in his cell. If that is true, then Fisher may no longer be an active employee of the Milwaukee County Jail. The court will order service on all defendants through its informal service agreement with Milwaukee County. If defense counsel is unable to identify or serve Fisher, then the plaintiff may be responsible for arranging alternate service of his second amended complaint on Fisher or for paying the costs to have the U.S. Marshals locate and serve Fisher.

## II. Conclusion

Under an informal service agreement between Milwaukee County and this court, the court will electronically transmit a copy of the second amended complaint and this order to Milwaukee County for service on defendants T. Foley, Ward, Hodges, Fisher, Madden and Howard. Under the informal service agreement, the court **ORDERS** those defendants to respond to the second amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 30th day of April, 2024.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**